IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ZONA KEEN,                        )
                                  )    Civil No. 05-6043-JE
          Plaintiff,              )
                                  )
     v.                           )    FINDINGS AND
                                  )    RECOMMENDATION
JO ANNE B. BARNHART,              )
commissioner, Social              )
Security Administration,          )
                                  )
          Defendant.              )

          D. James Tree
          Tree Law Offices
          3711 Englewood Avenue
          Yakima, WA  98902
               Attorney for Plaintiff

          Karin J. Immergut
          U.S. Attorney
          Neil J. Evans
          Asst. U.S. Attorney
          1000 S.W. 3rd Avenue, Suite 600
          Portland, OR  97204-2902


1 - FINDINGS AND RECOMMENDATION

Thomas M. Elsberry
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
        Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Zona Keen brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381-1383f.  This action should be remanded for further consideration.

### PROCEDURAL BACKGROUND

Plaintiff filed her present application for SSI benefits on January 16, 2002, alleging that she had been disabled since February 13, 1999, because of hearing loss with severe loud ringing in the ears, migraine headaches, back pain, and depression.  The application was denied initially on April 18, 2002, and was denied on reconsideration on September 9, 2002.

Based on plaintiff's timely request, a hearing was held before Administrative Law Judge (ALJ) Timothy C. Terrill on October 22, 2003.  Plaintiff, who was represented by counsel, testified at the hearing.  Also testifying was Dennis Elliot, a Vocational Expert (VE).

In a decision issued on December 23, 2003, the ALJ found that plaintiff was not disabled within the meaning of the Social

2 - FINDINGS AND RECOMMENDATION

Security Act because she had the residual functional capacity (RFC) to perform work that existed in significant numbers in the national economy.   That decision became the final decision of the Commissioner on December 16, 2004, when the Appeals Council denied plaintiff's request for review.   In the present action, plaintiff appeals from that decision.

Plaintiff previously filed applications for disability benefits on December 15, 1995, June 12, 1997, and May 31, 2000. Her 1995 application was denied initially and on reconsideration. Plaintiff did not request a hearing following those denials.   Next, her 1997 applications for Disability Insurance Benefits (DIB) and SSI benefits were denied initially and on reconsideration. Thereafter, plaintiff requested and was granted a hearing.   On February 12, 1999, the presiding ALJ issued a decision finding that plaintiff was not disabled.   That decision became the final decision of the Commissioner on October 19, 2000, when the Appeals Council denied plaintiff's request for review of the ALJ's decision.  Plaintiff did not appeal that final decision.  Finally, her 2000 application for SSI benefits was denied initially and plaintiff did not appeal that denial.

<u>Factual Background and Medical Evidence</u>

Plaintiff was born on August 23, 1974, and was 29 years old when the ALJ filed the decision at issue here.  She completed 12th grade, having been enrolled extensively in special education

classes, and attended approximately one year of community college.[1]
Plaintiff has no past relevant work experience.  She last worked as
a grocery store bagger in May 1994.  The parties' disagreement as
to the correctness of the ALJ's decision centers on whether the ALJ
failed to specifically identify ringing in the ears, poor balance,
and  a  number  of  mental  impairments,  including  passive
aggressive/passive  dependent  personality  disorder,  social
immaturity, dyslexia, and low self-esteem, as severe impairments at
the  step-two  inquiry;  whether  the  ALJ  incorporated  each  of
plaintiff's severe impairments into his RFC assessment; and whether
the ALJ met his burden in identifying specific jobs plaintiff can
do in light of the combination of her limitations.  Accordingly, my
review of the medical evidence below is limited to the relevant
records which the parties have cited in their memoranda.

Dr. Robert E. Schneider, an examining physician, performed a
psychological evaluation of plaintiff on October 15, 1998.  Dr.
Schneider  reported  that  plaintiff  suffers  from  no  psychiatric
impairment or disability and is "perfectly capable of working."  He
noted that the primary barrier to her working was her lack of
motivation and what he diagnosed as "passive aggressive/passive
resistant personality disorder."  Dr. Schneider indicated that
plaintiff's  lack  of  self-esteem  and  self-confidence  likely

---

[1]    Plaintiff testified that she got a "C" in one of her
community college courses and received no credit in her other
courses.

4 - FINDINGS AND RECOMMENDATION

contribute to her motivational difficulties. In addition, Dr. Schneider noted that based on his examination and testing, while plaintiff can do basic math and manage her own money, "she probably should not perform math as an incidental requirement of a job."

Carolyn A. O'Connor, M.D., a treating physician, examined plaintiff on May 26, 1999. Dr. O'Connor reported that plaintiff is a "morbidly obese female with very large breasts and back pain secondary to this . . . ." At that same visit, Dr. O'Connor noted that plaintiff reported that she was sleeping poorly and had increased stress. Approximately one year later on June 26, 2000, Dr. O'Connor examined plaintiff again. Plaintiff reported that while lifting boxes as a volunteer at a food bank, she experienced an onset of mid low back pain. Dr. O'Connor diagnosed her with cervical, thoracic and lumbar pain secondary to a lifting-related spinal strain, and prescribed physical therapy.

Saleem Khamisani, M.D., an examining physician, performed an evaluation of plaintiff on September 26, 2000. Dr. Khamisani reported that he had to speak very loudly to plaintiff for her to hear him and that "Weber's and Rinne's tests [were] consistent with sensory neural hearing deficits bilaterally." He noted tenderness in her cervical and lumbar spine with "moderate paraspinal spasm in the lumbar area, right more than left." He reported that "[s]he was unable to squat more than one-third of knee bend, further limited by low back pain." He recommended that she "avoid

repetitive bending, twisting and heavy lifting as well as repetitive squatting" and noted significant problems of ringing in both ears.

In an assessment completed October 16, 2000, Dr. Diane Rubin, a non-examining physician, opined that plaintiff could lift fifty pounds occasionally and could lift twenty-five pounds frequently. The physician opined that plaintiff could sit for six hours in an eight-hour day, and could stand/walk for six hours in an eight-hour day. Dr. Rubin indicated that plaintiff would be limited to occasional climbing due to obesity and occasional balancing due to obesity combined with her hearing impairment. She added that plaintiff should avoid concentrated exposure to noise, noting that she "needs to avoid 'an environment with loud background noise which would preclude hearing necessary instructions.'" Dr. Rubin also noted a mild decrease in range of motion in the back and presence of a back spasm, but opined that plaintiff's back difficulties were not expected to last twelve months or more.

Jennifer Hanlon, Family Nurse Practitioner (FNP), a treating practitioner, examined plaintiff on September 11, 2001, and again on January 30, 2002. In 2001, FNP Hanlon reported that plaintiff complained of constant back and breast pain. She noted "a pronounced lordotic curve of her spine" and submitted a referral for breast reduction surgery. She also noted that plaintiff was hard of hearing and had some unusual speech tones related to her

hearing loss.  In 2002, FNP Hanlon reported that plaintiff complained of depression, sleeping problems, lack of appetite and anxiety attacks.  She noted that plaintiff reported that the "symptoms had been present for 2-3 wks, but she has had similar symptoms off and on in the past."  The FNP diagnosed plaintiff with "acute grief reaction, possibly overlying a Hx of more chronic recurring depression or dysphoria," and started her on Zoloft.

Dr. Jana Zeedyk, an examining physician, performed a psycho-diagnostic interview of plaintiff on March 13, 2002.  Dr. Zeedyk reported that plaintiff lost her father in January 2002, and complained of depression, hopelessness, fatigue and frequent crying.  She noted that plaintiff took antidepressants short term, but that at the time of the interview she reported feeling "'a little bit better.'"  Dr. Zeedyk also noted that plaintiff has never lived alone, never had a driver's license, and that she possessed a limited fund of word knowledge and an extremely limited general fund of information.  She reported that Dr. Schneider's test results were consistent with plaintiff's educational history in special education classes.  Dr. Zeedyk diagnosed plaintiff with borderline intellectual functioning, bereavement disorder, dependant personality features, and a GAF of 70.

In an assessment completed April 4, 2002, Dr. Robert Henry, a non-examining physician, opined that plaintiff is limited in her ability to understand, remember and carry out detailed

instructions.   Dr. Henry reported that plaintiff is capable of carrying out simple, routine tasks and of sustaining effort, but that she needs supervision which provides direction to her in simple, concrete terms.   In addition, he opined that plaintiff suffers from "inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by . . . . pathological dependence, passivity, or aggressivity."

## **HEARING TESTIMONY**

### 1.   Plaintiff's Testimony

Plaintiff testified that she attended special education classes all through school, that she reads at a third-grade level, and that numerous people have told her that she has dyslexia.   She testified that she has worn hearing aids in both ears since she was two years old and that her hearing had grown worse in the last few years due to ringing in the ears.   She testified that the ringing in the ears causes migraine headaches which, in turn, cause disorientation and make it so that she "cannot function right."   She testified that she has to lie down nearly everyday, sometimes for half the day, to get rid of the headaches.   Plaintiff testified that exposure to too much noise triggers the ringing in the ears and headaches and causes her to get "stressed out."   She also testified that the ringing in the ears makes her dizzy and affects her balance.

8 - FINDINGS AND RECOMMENDATION

Plaintiff testified that she has applied for over 45 different jobs with no success and that she cries every night feeling that she "wasn't good enough, wasn't given the chance to prove [her]self." She further testified that since her father's death in January 2002 she has been depressed and has had difficulty sleeping, but that she was not in counseling because the state would not pay for it.

She testified that she last held a job in 1993 bagging groceries at a supermarket. She testified that she was doing fine at that job before she quit because she was pregnant and her doctor did not want her lifting more than 25 pounds. She testified that back problems now prevent her from lifting heavy things. Finally, she testified that she was the primary care giver for her eight year old son.

2.   Vocational Expert

The ALJ posed a hypothetical to the vocational expert (VE) describing an individual of plaintiff's age, with plaintiff's education and work experience, who could perform simple, routine, repetitive work, and should not engage in any work requiring precise hearing.   The hypothetical also proscribed exposure to concentrated noise or any hazards such as moving equipment or machinery.

The VE testified that the individual described could work as a seedling sorter, small product assembler, and photo finisher.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 4041520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520©).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If claimant's impairment does not meet or equal one listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy. Id.

## ALJ'S DECISION

In the first two steps of the disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability, and that plaintiff's depression, borderline intellectual functioning, migraines, hearing loss, and back disorder were severe impairments.

At step three, the ALJ found that these impairments did not meet or medically equal the criteria set out in the listings.

The ALJ found that plaintiff's allegations concerning her limitations were not "totally credible," and that plaintiff retained the residual functional capacity

> for simple, routine, repetitive work. She cannot perform work requiring precision hearing. She should avoid concentrated exposure to noise. She cannot work around hazards. She can lift 20 pounds occasionally and 10 pounds frequently. She can stand and walk 6 hours out of an 8-hour day and sit 6 hours out of an 8-hour day.

At step four, the ALJ concluded that plaintiff has no past relevant work.

At step five, he concluded that plaintiff could perform a "significant range of light work," and could perform a number of jobs in the national economy. As examples of such work, the ALJ cited work as a "seedling sorter, small product assembler and photo finisher." Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**DISCUSSION**

Plaintiff contends that the ALJ erred in failing to identify several of plaintiff's impairments as "severe impairments" at step two of his analysis; failing to conduct a proper RFC assessment; and failing to meet his burden at step five of the process in identifying specific jobs which plaintiff can do in light of her combination of impairments.

1. Failure to identify several of plaintiff's impairments as "severe impairments" at the step two inquiry.

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals ability to work.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)(citing Bowen v. Yukert, 482 U.S. 137, 153-54 (1987); SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(adopting SSR 85-28)).

In his decision denying plaintiff's application for benefits, the ALJ found that plaintiff's depression, borderline intellectual functioning, migraines, hearing loss, and back disorder constituted severe impairments. Plaintiff contends that the ALJ improperly omitted ringing in the ears; poor balance; and a number of mental impairments, including passive aggressive/passive dependent

personality disorder, social immaturity, dyslexia, and low self-esteem from the list of severe impairments.

Turning first to the ringing in plaintiff's ears, the ALJ noted that plaintiff reported that ringing in her ears causes migraines. He then concluded that her migraine headaches were severe impairments. I find that by identifying plaintiff's hearing loss and migraine headaches as severe impairments, the ALJ adequately captured the significant aspects of any limitation brought on by the ringing in her ears. Though Dr. Khamisani specifically noted that plaintiff has "significant ringing in both ears," he did not link that condition with any other problems beyond hearing loss. Moreover, plaintiff testified that the increased ringing in her ears worsened her hearing and caused migraines. She further testified that these migraines, in turn, caused her anxiety, dizziness, and disorientation. To the extent that plaintiff testified that ringing in her ears caused her additional problems not covered under hearing loss and migraines, I note that the ALJ found that plaintiff's allegations were "not entirely credible in light of her daily activities and the treatment record." Accordingly, I conclude that there is substantial evidence in the record to support the ALJ's omission of ringing in the ears as a separate severe impairment.

Next, I conclude that the ALJ adequately considered plaintiff's testimony that she suffers from poor balance when her

ears are ringing, and that there is substantial evidence in the record to support his omission of poor balance as a separate severe impairment.    While the ALJ acknowledged that plaintiff is overweight and has a hearing impairment, he also correctly noted that plaintiff never "reported any balancing difficulties to any treating source." Accordingly, I conclude that the ALJ did not err when he failed to convert Dr. Rubin's opinion that plaintiff has a limited ability to balance herself because of obesity and hearing impairment into a severe impairment.

Finally, with regard to plaintiff's mental impairments, I conclude that while the ALJ adequately addressed plaintiff's diminished intellectual functioning and depression, he failed to assess and discuss: 1) Dr. Schneider's October 1998 diagnosis that plaintiff suffers from passive aggressive/passive resistant personality disorder; and 2) Dr. Henry's April 4, 2002 opinion that plaintiff suffers from inflexible and maladaptive personality traits.    Despite the Commissioner's arguments to the contrary, there is no indication in the ALJ's decision that he rejected these mental disorder findings either because he found them non-probative or because he found they referred only to a non-relevant period. To the contrary, the ALJ specifically referred to other findings in these doctors' reports.

The ALJ stated only that "[t]he claimant has mild difficulties in maintaining social functioning.    She reports a tendency to

isolate at home since the father's death but there is no evidence of difficulty getting along with others."  However, he did not acknowledge or address Drs. Schneider's and Henry's respective diagnosis of passive aggressive/passive resistant personality disorder and inflexible and maladaptive personality traits.  The ALJ's treatment of the medical opinions relating to her mental limitations was inadequate.  Accordingly, this action should be remanded for further consideration of whether the impairments identified in Drs. Schneider and Henry's reports constitute severe impairments.  If on remand the ALJ finds these impairments are not severe, he must explicitly discuss his reasons why.  In the alternative, if he finds they are severe, he must include them in his RFC analysis.

2.   Failure to conduct a proper RFC assessment.

Plaintiff contends that the ALJ's RFC assessment was deficient in two respects.  First, plaintiff claims the ALJ failed to incorporate into his RFC assessment those same impairments that he failed to identify as severe impairments at step two of his analysis.  Should the ALJ determine, on remand, that passive aggressive/passive resistant personality disorder and/or inflexible and maladaptive personality traits constitute severe impairments, he must account for those impairments in a new RFC assessment.

Second, plaintiff argues that the ALJ failed to adequately incorporate certain impairments he identified as severe in his RFC

assessment.  Specifically, plaintiff contends that the ALJ failed to fairly incorporate plaintiff's poor balance and migraine headaches into his RFC assessment.  In essence, plaintiff challenges the ALJ's assessment of her credibility as to the severity of her migraines and whether she has difficulty balancing. Though plaintiff has not directly challenged the ALJ's conclusion that she was not wholly credible, her assertion that the ALJ failed to fairly incorporate these impairments indirectly challenges his credibility determination.  Accordingly, I will analyze the ALJ's credibility determination below.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(*en banc*).  Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

An ALJ rejecting a claimant's testimony may not simply provide "general findings" but instead must identify the testimony that is

not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 also provides that an ALJ must consider the entire record and must consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

In his decision denying plaintiff's application for benefits, the ALJ concluded that plaintiff's allegations were "not entirely credible in light of her daily activities and the treatment record." In support of this conclusion and as discussed above, the ALJ stated that "[w]hile she does have a hearing impairment, she has not reported any balance difficulties to any treating source." In addition, he found that: 1) plaintiff did not seek treatment for headaches; 2) there was no evidence that lying down during the day was a medical necessity; and 3) "[h]er allegations that she lays down half the day [are] not consistent with her ability to function independently, care for her son, and volunteer at his school twice a week."

The ALJ satisfied the requirements for discounting a plaintiff's credibility. The ALJ identified the testimony that he found not wholly credible, considered the record as a whole,

19 - FINDINGS AND RECOMMENDATION

including plaintiff's daily activities, and identified the evidence that was inconsistent with plaintiff's complaints.  The reasons the ALJ provided for refusing to fully credit plaintiff's description of her symptoms concerning the severity of her migraine headaches and claims of poor balance were clear and convincing, and substantial evidence in the record supports his credibility finding.  Accordingly, I conclude that the ALJ adequately accounted for those impairments in his residual functional capacity assessment by finding that plaintiff "should avoid concentrated exposure to noise" and that "she cannot work around hazards."

3.   <u>Failure to meet his burden in identifying specific jobs plaintiff can do in light of the combination of her limitations.</u>

The ALJ's finding that plaintiff could perform the specific jobs listed in his decision, namely seedling sorter, small product assembler, and photo finisher, is not supported by substantial evidence in the record for the following reasons.

First, to the extent that the ALJ failed to identify and incorporate certain severe mental impairments in his RFC assessment, the corresponding hypothetical he presented to the VE was incomplete.  In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984) (<u>citing Baugus V. Secretary of Health & Human Services</u>, 717 F.2d 443, 447 (9th Cir. 1983)).  The ALJ's depiction of the claimant's limitations set out

in the hypothetical  must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the assumptions included in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value.  Gallant, 753 F.2d at 1456.

Second, the hypothetical that the ALJ posed to the VE is internally inconsistent with the ALJ's own decision in that it did not reference the ALJ's findings that plaintiff is limited to "light work," has lifting restrictions, and "can stand and walk 6 hours out of an 8-hour day and sit 6 hours out of an 8-hour day."

Finally, even assuming that the ALJ's hypothetical was accurate, the demands and environmental conditions of the specific jobs listed are beyond the physical and mental limitations identified in the ALJ's hypothetical posed to the VE.  The hypothetical described an individual who was limited to "simple, routine, repetitive work," should not engage in work requiring precise hearing, should not be exposed to any concentrated noise, and should not be exposed to hazards such as moving equipment and machinery.

However, as plaintiff correctly notes, the seedling sorter and small products assembler jobs exist in an environment with a "Level 4 - Loud" noise level.  Plaintiff's Memorandum in Support, Exhibit A at 3 & Exhibit C at 4 (citing Dictionary of Occupational Titles, U.S. Dept. of Labor, DOT no. 451.687-022, 706.684-022 (4th ed.

1991)).   This  noise  level  is  inconsistent  with  the  ALJ's
hypothetical,  which  precluded  exposure  to  concentrated  noise.
Given the steady, repetitive nature of both of these jobs, there is
no  basis  for  distinguishing  between  the  "concentrated"  noise
referred to in the hypothetical and the "loud" noise noted in the
DOT.   In  addition,  as  the  Commissioner  points  out,  the  job  of
seedling sorter requires *frequent* stooping or crouching which is in
conflict with the ALJ's finding that plaintiff is limited to light
work  because  light  work  allows  for  only  *occasional*  bending.
Defendant's Brief at 8-9 (citing SSR 83-14).   It is the ALJ's
assessment of plaintiff's limitations that the court must evaluate
in determining the validity of the hypothetical he posed to the VE.
Accordingly,  Dr.  Khamisani's  opinion  that  plaintiff  is  only
precluded  from  *repetitive*  bending  is  not  controlling  here.

Furthermore, the DOT listings indicate that photo finisher and
small  product  assembler  jobs  require  the  ability  to  "carry  out
detailed but uninvolved written or oral instructions," whereas the
ALJ's hypothetical limits plaintiff to "simple" work.   The job of
photo finisher is also problematic in that it requires workers with
a  numerical  aptitude  in  the  middle  1/3  of  the  population.   This
qualification is inconsistent with the ALJ's finding that plaintiff
has borderline intellectual functioning.   In addition, though the
ALJ does not specifically address plaintiff's math skills, nothing

in the record refutes Dr. Schneider's opinion that plaintiff should probably not perform math as an incidental requirement of a job.

To summarize, the limitations imposed by the sensitivity to noise identified in the hypothetical precludes plaintiff's performance of seedling sorter and small part assembly jobs, her bending restrictions are inconsistent with the ability to "frequently" bend required by the seedling sorter job, the restriction to "simple" work eliminates the photo finisher and small part assembly jobs, and the limitation of intellectual ability further undermines the ability to perform mathematical functions required by the photo finisher job.

## RECOMMENDATION

_____For the reasons identified above, this action should be REMANDED to the Agency for further analysis of whether the mental impairments identified in Drs. Schneider and Henry's reports constitute severe impairments. Depending on the outcome of that inquiry, other issues concerning plaintiff's residual functional capacity and related issues concerning her ability to perform other work that exists in substantial numbers in the national economy may need to be addressed as well. In addition, in light of my conclusion that plaintiff cannot perform the specific jobs identified in the ALJ's report, the Agency should further consider the issue of whether there is other work that exists in substantial

numbers in the national economy that plaintiff can perform in light of her physical and mental limitations.

A judgment should be entered remanding this action for further consideration.

### SCHEDULING ORDER

_____The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due April 12, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 27th day of March, 2006.


/s/ John Jelderks
John Jelderks
United States Magistrate Judge

24 - FINDINGS AND RECOMMENDATION